*In the matter of the Estate of*
*Jack LEE, Sr.*
Decedent
*Emma BEGAY*
Administrator
and concerning
*Evelyn LEE, et al.*
Intervenors/Respondents

In the Family Court of the Navajo Nation
Judicial District of Shiprock, New Mexico

No. SR-FC-0287-01-CV

April 23, 2004

**PRELIMINARY ORDER ON THE ISSUE OF NAVAJO TRADITIONAL DIVORCE**

This Matter having come before the Court on a Petition For Probate filed by Petitioner, Emma Begay on March 26, 2001and the Court having received and reviewed testimony and evidence and the record having been thoroughly reviewed by the Court, the Court hereby FINDS:

1. This Court has continuing subject matter and personal jurisdiction over the matter herein.

2. On March 26, 2001 Petitioner, Emma Begay, filed a Petition to Probate her late father, Jack Lee Sr.'s estate with this Court.

3. The decedent died on December 8, 2000. Jack Lee Sr. was an enrolled member of the Navajo Nation. Jack Lee Sr. lived within the exterior boundaries of the Navajo Nation at Mancos Creek near the New Mexico and Colorado state line.

4. On March 27, 2001, Petitioner, Emma Begay was appointed Administrator of Mr. Lee's estate. Petitioner is the child of the decedent and Respondent, Evelyn Lee. Other children and heirs are David Johnson Lee; Jackson Lee; Jack Lee, Jr.; Emma Jean Lee; Davis David Lee; Paul Harold Lee; Vicki Jean Lee, who are Intervenors/Respondents along with their mother.

5. After the appointment of Emma Begay as Administrator, numerous pleadings were filed by all parties.

6. A Final Hearing was set on October 11, 2001. In lieu of a Hearing, the Counsels agreed to meet with all parties to review the Final Report and obtain a stipulated consensus of the issues and to determine all issues that remained in dispute, including whether a marriage existed between Evelyn Lee and the Decedent.

7. On January 7, 2002, the Court issued Notice of Pending Dismissals as the matter was inactive since the October 11, 2001 Hearing. Upon the case's reactivation, a Final Hearing was scheduled for March 21, 2002, but was continued until June 12, 2002. Pursuant to Pre-Trial requests, the Court accepted the Administrator's Final Report and Proposed Distribution. Both parties were instructed to file proposed distributions and to brief the disputed issues of marriage or traditional divorce.

8. On May 15, 2003 a Hearing was held on the issues of marriage and traditional divorce and their effect on the status of Intervenor/Respondent, Evelyn Lee. The Court heard testimony and received evidence on these issues.

## FINDINGS OF FACT

1. It was clarified that Jack Lee Sr. and Evelyn Lee were married pursuant to a Navajo marriage license. For a period of time the family lived in Cortez, Colorado where their children attended school.

2. On or about 1970 Jack Lee, Sr. left Evelyn Lee and returned to Mancos Creek. Upon the separation of Jack Lee Sr. and Evelyn Lee, they never reconciled or resumed a marital relationship together.

3. Jack Lee Sr. died on December 8, 2000.

4. The Administrator, Emma Begay, who is the child of the Decedent and Evelyn Lee raised the issue of traditional divorce of her parents. The other children disagree with her.

5. The Navajo term for divorce is *yoodeyá* or *tsé háámaaz* (stone rolled away) as translated by the elderly witnesses means a permanent separation of a married couple. Each leaves the marital home and never cohabitate together again. The wife's decision is considered law if she desires to separate from her husband and the husband has to respect and abide by her decision. The relatives of the couple become aware of the permanent separation and acknowledge that a divorce has occurred—*yoodeyá* or *tsé háámaaz.*

## CONCLUSIONS OF LAW

1. Pursuant to 7 NNC § 252, the Family Court of the Navajo Nation has original jurisdiction.

2. Pursuant to 8 NNC § 1 the Family Court of the Navajo Nation shall have original jurisdiction over all cases involving the descent and distribution of deceased Indian's unrestricted property found within the territorial jurisdiction of the Court.

3. Pursuant to 8 NNC § 2 (B) the Courts shall apply the custom of the Navajo Nation as to inheritance if such custom is proved. Otherwise, the court shall apply state law in deciding what relatives of the decedent are entitled to be heirs.

4. Pursuant to 7 NNC § 204 (C) any matters not covered by the traditional customs and usages or laws or regulations of the Navajo Nation or by applicable federal laws and regulations, may be decided by the Courts of Navajo Nation according to the laws of the state in which the matter in dispute may lie.

5. Navajo Nation Courts have interpreted 7 NNC § 204 to mean that Navajo law shall apply wherever possible. *Johnson v. Dixon*, 4 Nav. R. 108 (Nav. Ct. App. 1983). However, the application of Navajo custom is not automatic and requires the Courts to thoroughly evaluate and examine the matter before them. The Court has completed its analysis and has determined that there was a traditional Navajo divorce between the decedent, Jack Lee, Sr. and Intervenor/Respondent, Evelyn Lee. The Court adopts the view in *Lente v. Lente*, 3 Nav. R 72 (1982) in which the Navajo Supreme Court (then the Court of Appeals) expounded on 7 NNC § 204. Although that case pertained to a Navajo and non-Navajo party the basic principles articulated in *Lente* apply here:

> While this is a general statement, the solution lies in the courtroom. Whether parties expect tradition to be applied will come out in testimony, and the Navajo Tribal Council has very wisely provided that judges may take care of any doubts that they are using custom and tradition by requesting the advise of counselors .... Because the court room is the place to make the determination, the trial judge is in the best position to apply customary law. In this case, the trial judge heard sufficient testimony on the customary law of child custody, and he was in the best position to apply it ..... It should be noted that the application of custom depends on a good many circumstances and all the facts of the case.

*See also, In Re Marriage of Loretta Francisco*, 6 Nav. R 134 (Nav. Sup. Ct. 1989) and *Navajo Nation v. Platero*, 6 Nav. R. 422 (Nav. Sup. Ct. 1991) (The facts of the case require the application of Navajo custom).

Likewise, in *Apache v. Republic National Life Insurance Co.*, WR-CV -197-82, the Window Rock District Court held that, "there was a principle of finality in Navajo customary divorce, and the principle of restoring harmony in the community by quickly and finally breaking ties so the community can soon return to normal which is common sense. To permit a former spouse to keep such ties that she or he may be said to be lurking behind the hogan waiting to take a portion of the corn harvest is unthinkable, since each spouse returns to his or her own family after the divorce. Each former spouse should return [to their] home after making the break and disturb others no more." In that case, the Court had already ruled that the former wife lost any interest in the insurance proceeds because of the divorce, and she asked the Court to reconsider its ruling. *Id.*

In its reconsideration the Court initially determined that there was no applicable federal or Navajo statutory law, but there was Navajo Customary law that could be applied. The Court found that there was a custom that terminates a marriage by someone moving, the woman keeping the property when the move is made or the couple makes an equal division of the property before going their own ways. *Id.*

In this case, four (04) credible experts on Navajo custom and tradition testified about the Navajo term for divorce—*yoodeyá* or *tsé háámaaz* and how it occurs between married couples.[1] Based on their testimonies and evidence in the record Jack Lee Sr. and Evelyn Lee were traditionally divorced as of 1970. From 1970 up until the time of Decedent's death Intervenor/Respondent and Decedent were physically separated and they never lived together again. Rather, Decedent returned to his home at Mancos Creek. Intervenor/Respondent did not controvert this evidence in any way. Thus, it is clear that *yoodeyá* or *tsé háámaaz* had indeed occurred in this particular relationship.

IT IS THEREFORE AJUDGED AND ORDERED THAT:

1. Based on the record when the Decedent, Jack Lee, Sr. left the marital home and separated from Intervenor/Respondent, Evelyn Lee in 1970, *yoodeyá* or *tsé háámaaz* occurred between the parties and they were traditionally divorced from that point on.

2. Decedent, Jack Lee, Sr., did not have a surviving spouse at the time of his death.

3. The Administrator is hereby ordered to file an Amended Final Report and Distribution consistent with this Preliminary Determination and Order. The Amended Final Report and Distribution is due no later than May 21, 2004.

4. Upon receipt and review of the Amended Final Report and Distribution and distribution of copies to the heirs, this Court shall schedule the Final Hearing.

[1] Experts on Navajo custom and tradition who testified about traditional Navajo divorce were Carl Todacheeney of Shiprock, NM, Lena Nakai of Sanostee, NM, Harry Tom of Red Yalley, AZ, and Hoskie Barton of Beclabito, NM.

5. This Preliminary Order On The Issue of Navajo Traditional Divorce shall be incorporated into the Final Judgment after a Final Hearing is held.

6. The Clerk of the Court shall provide a copy of this Preliminary Order On The Issue of Navajo Traditional Divorce to Counsels of Record.